UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JORGE EDILBERTO GOMEZ,

    Plaintiff,

  v.

E. FICKET, *et al.*,

    Defendants.

Case No. C07-5635 BHS/KLS

REPORT AND RECOMMENDATION

**Noted For: August 22, 2008**

Before the court is the motion for summary judgment of Defendants Day, Jacobson and Taylor, all correctional officers with the Lewis County Jail. (Dkt. # 30). Defendants seek dismissal of Plaintiff's claims for failure to exhaust administrative remedies and failure to establish a violation of a constitutional right under 42 U.S.C. § 1983. Plaintiff Jorge Edilberto Gomez filed a response in opposition. (Dkt. # 31). Defendants filed a reply. (Dkt. # 32). For the reasons stated below, the court recommends that Defendants' motion for summary judgment be granted.

## I. BACKGROUND

Mr. Gomez was incarcerated in the Lewis County Jail between April 21, 2005 and November 3, 2005, when he was transferred to the Department of Corrections. The plaintiff alleges that in December 2005, while at the Washington Corrections Center (WCC) waiting to be classified, he was raped by his cellmate who was a known sex offender. He places blame for this incident on three

REPORT AND RECOMMENDATION - 1

employees of the Lewis County Jail based on their failure to follow through on specific assurances they gave him. In particular, they assured him that it was noted in his file that Mr. Gomez did not want to be housed with a sex offender because he was sexually abused in his childhood and that his file would transfer with him to the DOC so that the DOC would also be aware of his safety concerns. It is undisputed that Mr. Gomez' Lewis County Jail file was not transferred to the DOC.

## II. FACTS

### A. Plaintiff's Allegations

In his verified complaint, Mr. Gomez alleges that while he was housed at the Lewis County Jail, he told Officer Jacobson that he was not comfortable being housed with a sex offender because he had been a victim as a child. (Dkt. # 8, p. 6).[1] Mr. Gomez alleges that Officer Jacobson told him that his concerns would be logged in his file, that his file would be sent to the DOC and if that had been done it could have prevented his being housed with Paul Conrad, a sex offender, who raped Mr. Gomez in December of 2005. *Id*.

Mr. Gomez alleges that when he expressed concerns to Officer Taylor about being housed with sex offenders at the Lewis County Jail, she told him that there would be more room to accommodate him at the DOC and that he should just hang in there. *Id*. Officer Taylor also confirmed that his file contained the notation that he did not want to be housed with a sex offender. *Id*. Mr. Gomez alleges that Officer Taylor asked Officer Day to check his file to see the last entry for any inmates who had been housed with Mr. Gomez who were sex offenders. *Id*. p. 7. Mr. Gomez alleges that Officer Day denied that any of Plaintiff's cell mates were sex offenders, although he claims that at least one of them who was housed with him on November 4,

---

[1]Because Mr. Gomez' response and verified amended complaint are "based on personal knowledge and set [] forth specific facts admissible in evidence, [they] may be considered in opposition to summary judgment. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 & n. 1 (9th Cir. 1987).

REPORT AND RECOMMENDATION - 2

2005 was a sex offender, but she did confirm that his complaint had been logged. *Id*.

**B.     Affidavit of Paul Stewart**

Defendants offer the Affidavit of Paul Stewart, a Community Corrections Officer of the DOC, assigned as DOC liaison to the Lewis County Jail, who states that he has reviewed the records of the Lewis County Jail and DOC regarding Mr. Gomez, and that he is personally familiar with procedures followed whenever an inmate is transferred from a county jail to State custody. (Dkt. # 30-2, p. 1).

Mr. Stewart states that the classification procedure includes a highly individualized assessment of appropriate manner and level of security under which to house the particular prisoner. *Id*. As a part of this process each inmate is assessed having regard to multiple factors, including but not limited to the crimes for which he is imprisoned, history of violence, prior infractions while in custody, immigration hold status, existence of outstanding felony warrants, age, and history of escape or of alluding law enforcement. *Id*.

An assessment was performed on Mr. Gomez, who was scored at 41 points and classified as a medium security prisoner. *Id*.

Mr. Stewart further states that, as part of the initial intake procedure which occurs upon a prisoner's transfer from county to State custody, an assessment is made as to whether that inmate needs to be housed apart from any other inmate, in order to assure that inmate's safety. *Id*. The newly transferred inmate is afforded extensive opportunity to provide information about others whom he feels might present a danger to the newly transferred inmate's safety, should he come into contact with that second person while in State custody. *Id*. Each State prisoner may, at any time, follow an established and regular procedure to advise a correctional staff of any fellow inmate whom he comes to fear may do him harm. *Id.*

REPORT AND RECOMMENDATION - 3

### III. STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether summary judgment should be granted, the court must view the record in the light most favorable to the nonmoving party and indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e). When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id*.

The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### IV. DISCUSSION

**A.   Failure to Exhaust**

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the PLRA states:

REPORT AND RECOMMENDATION - 4

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

This requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). Further, "[a]ll 'available' remedies" must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Id.* at 524. Inmates must exhaust prison grievance remedies before filing suit if the grievance system is capable of providing any relief or taking any action in response to the grievance, and must do so in a timely manner. *Booth v. Churner*, 531 U.S. 956, 121 S. Ct. 1819, 1825 (2001); *Woodford v. Ngo*. 548 U.S. 81, 126 S.Ct. 2378, 2386-87 (2006). The purpose of the exhaustion requirement is to "reduce the quantity and improve the quality of prisoner suits; . . . [and] afford corrections officials . . . opportunity to address complaints internally. . . . 42 U.S.C. § 1997e(a). *McKart v. United States*, 395 U.S. 185, 195 (1969).

In deciding whether the PLRA exhaustion standard has been met, it must be remembered that § 1997e(a) is an affirmative defense. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have the burden of raising and proving the absence of exhaustion. *Id*. There can be no "absence of exhaustion" unless some relief remains "available," and a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. *Brown v. Valoff*, 422 F.2d 926, 937 (9th Cir. 2005).

Mr. Gomez does not dispute that he did not exhaust his administrative remedies as to the claims in this lawsuit, but argues that he had no opportunity to exhaust because he was transferred out of Lewis County Jail right before the rape occurred and he could not have exhausted his

REPORT AND RECOMMENDATION - 5

remedies even if he had any to exhaust. (Dkt. # 31, p. 2).

There is no summary judgment evidence before the court as to what administrative remedies were available to Mr. Gomez in the particular situation alleged, i.e., where his complaint against the Lewis County Jail Officers did not "accrue" for purposes of a grievance until after he was transferred to a DOC facility. Defendants merely provide the conclusory statement that Mr. Gomez failed to exhaust his remedies. (Dkt. # 30, p. 3). Defendants must demonstrate that pertinent relief was available to Mr. Gomez – for example, relevant evidence might include statutes, regulations or other official directives explaining the scope of the administrative review process; testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case. *See, e.g. Brown*, 442 F.3d at 936-37, citing *Wyatt*, 315 F.3d at 1119; *Brown v. Croak*, 312 F.3d 109, 113 (3rd Cir. 2002).

Thus, viewing the evidence in the light most favorable to Mr. Gomez, Defendants have failed to prove their affirmative defense of failure to exhaust administrative remedies and their motion for summary judgment on this ground should be denied.

**B.      Standard of Proof Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must

REPORT AND RECOMMENDATION - 6

be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

In this case, Mr.Gomez is claiming that Defendants Jacobson, Taylor and Day violated their duty to ensure his safety.

**C.     Plaintiff's Eighth Amendment Claim**

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *See Farmer*, 511 U.S. at 834.

To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837; *Gibson v. County of Washoe*, 290 F.3d 1175, 1187-88 (9th Cir. 2002). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the "serious threat" can be one to which all prisoners are exposed. *See Farmer*, 511 U.S. at 843. Prison officials may, however, avoid liability by presenting evidence

REPORT AND RECOMMENDATION - 7

that they lacked knowledge of the risk. *See id*. at 844; *Gibson*, 290 F.3d at 1187-88. Moreover, prison officials may avoid liability by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *See id*. at 844-45; *see generally Berg v. Kincheloe*, 794 F.2d 457, 462 (9th Cir. 1986).

Defendants, employees of the Lewis County Jail, argue that they are not liable because the alleged rape occurred some three months after Mr. Gomez was transferred to State custody, so their failure to log any safety concerns in his file could not have contributed to the rape. In addition, Defendants argue that the State classification and intake assessment procedures would have resolved any concerns Mr. Gomez had about his housing arrangements. (See e.g., Dkt. # 30, p. 6). In support, Defendants' offer the affidavit of Mr. Stewart who explains the multiple factors that are considered in the classification and assessment procedures for prisoners transferred into State custody. (Dkt. #30-2). As part of that initial intake procedure, an assessment is made as to whether an inmate needs to be housed apart from any other inmate in order to assure that inmate's safety and the newly transferred inmate is afforded extensive opportunity to provide information about others whom he feels might present a danger to his safety. *Id*. In addition, each inmate may advise correctional staff of any fellow inmate whom he comes to fear may do him harm. *Id*.

Mr. Gomez argues that Defendants do not dispute his allegations concerning the events that occurred while he was incarcerated at the Lewis County Jail, the duties owed to him by the Lewis County Correctional staff, or his subsequent rape. (Dkt. # 31, p. 1). Mr. Gomez is correct in that the defendants do not dispute that Officers Jacobson, Taylor and Day assured Mr. Gomez that his concerns about being housed with a sex offender would be logged in his file and that his file would be sent to DOC. There is no evidence to dispute that DOC did not receive the file

REPORT AND RECOMMENDATION - 8

and/or the notation in the file and there is no evidence to dispute that Mr. Gomez was subsequently housed with Paul Conrad, a sex offender, who raped Mr. Gomez.

To establish a constitutional violation, Mr. Gomez must establish that the Lewis County officers were "deliberately indifferent" to serious threats to his safety. *See Farmer*, 511 U.S. at 834. Here, there is no evidence that Defendants Jacobson, Taylor and Day had knowledge of the risk in light of the assessment and intake evaluation procedures that would be provided to Mr. Gomez when he left the custody of the county jail. While these Defendants may arguably have been negligent in their failure to log Mr. Gomez's concerns in his file, such negligence does not give rise to an abridgement of Mr. Gomez's constitutional rights. That Mr. Gomez's rape is not a foreseeable result of the Defendants' failure to log Mr. Gomez's concerns is particularly true when viewed in light of the fact that Mr. Gomez was transferred from county to State custody where an assessment was then performed to determine Mr. Gomez's classification, housing and security levels – a procedure over which these Defendants had no participation or control. Mr. Gomez does not dispute that such an assessment was performed on him when he was transferred to State custody and does not dispute that he was given an opportunity to make his concerns known to those in charge at the State facility where he was to be housed.

Viewing all the evidence in the light most favorable to Mr. Gomez, the undersigned finds that Mr. Gomez has failed to raise a material issue of fact as to whether Defendants were deliberately indifferent to a serious threat to his safety and recommends that summary judgment be granted in favor of Defendants Jacobson, Taylor and Day.

## V.  CONCLUSION

For the reasons stated above the Court should **GRANT** Defendants' motion for summary judgment (Dkt. # 28). A proposed order accompanies this Report and Recommendation.

REPORT AND RECOMMENDATION - 9

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **August 22, 2008**, as noted in the caption.

DATED this 6th day of August, 2008.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10